UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————

MOHAMMED DARWISH,

                Plaintiff,

v.

MICHAEL POMPEO, et al.,

             Defendants.

————————————————————

1:18-CV-1370 LJV (MJR)

REPORT AND
RECOMMENDATION

## INTRODUCTION

This case has been referred to the undersigned by the Honorable Lawrence J. Vilardo, pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial matters and for hearing and reporting on dispositive motions for consideration by the District Court.  (Dkt. No. 57)  Before the Court is defendants' motion to dismiss the amended complaint (Dkt. 42); plaintiff's motion to file a second amended complaint (Dkt. 55); and plaintiff's motion for an enlargement of time to serve summonses and the second amended complaint (Dkt. No. 69).

For the following reasons, it is recommended that: (1) defendants' motion to dismiss the amended complaint be denied as moot; (2) plaintiff's motion to file a second amended complaint be granted in part and denied in part; and (3) plaintiff's motion for an enlargement of time to serve summonses and the second amended complaint be granted.

## FACTS AND PROCEDURAL BACKGROUND[1]

### *The Amended Complaint*

On December 7, 2018, plaintiff Mohammed Darwish filed an amended complaint against Secretary of State Michael Pompeo; Secretary of Department of Homeland Security Kirstjen Nielsen; the United States Department of State; the United States Department of Homeland Security; Customs and Border Protection Officer James Light; and Andrew Lipkind, Assistant Chief Counsel for the Department of Homeland Security.[2] (Dkt. No. 17)  Darwish alleged that upon returning to the United States after a short trip to Toronto, Ontario on July 18, 2016, he was unlawfully detained and questioned by defendant Light. (Dkt. No. 17, ¶¶24-28)  Darwish further alleged that his Legal Permanent Resident card was confiscated, and that immigration removal proceedings were improperly instituted against him.  (*Id.*)  Darwish alleged that defendant Lipkind filed "Additional Charges of Inadmissibility/Deportability" against him on May 5, 2017, which accused Darwish of crimes he did not commit.  (*Id.* at ¶29)  Darwish also alleged that his passport application was wrongfully denied sometime in  2016.  (*Id.* at ¶20-23)  Based upon these allegations, the amended complaint: (1) sought a declaration of plaintiff's United States' citizenship pursuant to Section 1503(a) of Title 8 of the United States Code; (2) alleged that defendants violated plaintiff's Fifth Amendment rights in denying his passport and citizenship applications; (3) alleged constitutional violations against

---

[1] The facts described herein are taken from the pleadings, motion papers, exhibits and declarations filed in this lawsuit.

[2] Plaintiff's initial complaint was filed on November 29, 2018, along with an emergency motion for a preliminary injunction. (Dkt. Nos. 1, 2)  On December 4, 2018, the Court issued an order to show cause as to why the case should not be dismissed for lack of jurisdiction. (Dkt. Nos. 13, 14)  On December 7, 2018, plaintiff filed the amended complaint as of right.  *See* Fed. R. Civ. P. 15(a).  He also filed a response to the order to show cause and an amended motion for a preliminary injunction. (Dkt. Nos. 25-27)  On November 30, 2019, plaintiff's motion for a preliminary injunction was denied as moot. (Dkt. 56)

defendants Light and Lipkind related to the detention, the confiscation of plaintiff's Legal Permanent Resident card and the initiation of removal and deportation proceedings against him; (4) alleged that the United States Department of Homeland Security violated the Federal Tort Claims Act ("FTCA") by attempting to remove plaintiff from the United States and confiscating his Legal Permanent Resident card; and (5) sought attorney's fees under the Equal Access to Justice Act.  (Dkt. No. 17)

### Proceedings Terminated in Darwish's Favor

On February 6, 2019, two months after the filing of the amended complaint, Immigration Judge Denise Hochul dismissed the removal proceedings against Darwish. (Dkt. No. 42, ¶9, Exh. B)  Darwish's passport application was processed and his passport was issued to him on March 26, 2019.  (Id. at ¶10, Exh. D)  In addition, Darwish's application for a certificate of citizenship was approved, and he was notified of an appointment to take the Oath of Allegiance to the United States on September 4, 2019. (Dkt. No. 55-2, ¶15)

### Motion to Dismiss the Amended Complaint

On August 1, 2019, defendants Pompeo, Nielsen, United States Department of State, and United States Department of Homeland Security moved to dismiss the amended complaint on the basis that three of the causes of action were moot since Darwish received his passport and certificate of citizenship, and the removal proceedings were terminated in his favor.  (Dkt. No. 42)  Defendants also moved for dismissal of the FTCA claim on the basis that none of the defendants named in the amended complaint are subject to suit under the FTCA, and because Darwish failed to exhaust his administrative remedies as required by the FTCA.  (Id.)

On October 24, 2019, plaintiff filed a response in opposition to the motion to dismiss the amended complaint. (Dkt. No. 54)  Defendants filed a reply on November 25, 2019.  (Dkt. No. 60)

*Motion to File a Second Amended Complaint*

On October 29, 2019, while the motion to dismiss the amended complaint was still pending, plaintiff moved to file a second amended complaint.  (Dkt. Nos. 55; 55-2; 70-1) The proposed second amended complaint removed the causes of action against defendants Pompeo, Nielsen, the United States Department of State, and the United States Department of Homeland Security regarding the denial of Darwish's passport and citizenship applications.  (Dkt. No. 70-1)  The proposed second amended complaint instead added various causes of action against these same defendants for their alleged failure to process visa applications filed on behalf of Darwish's wife and two minor children.[3]  (*Id.*)  Specifically, Darwish alleged that he filed three Form I-130 Petitions for Alien Relative ("I-130 Petitions") on behalf of his wife and his children on July 21, 2017, in furtherance of their visa applications.  (Dkt. No. 70-1, ¶5)  Darwish alleged that the petitions were finally approved on March 18, 2019, after "extensive and unreasonable delays." (*Id.*)  He alleged that despite the approval of the 1-130 Petitions, his wife and children's visa applications remain pending at the National Visa Center. (*Id.*)  Based upon these allegations, the proposed second amended complaint asserted violations of the Administrative Procedures Act, the Immigration and Nationality Act, and the Fifth Amendment of the United States Constitution. (Dkt. No. 70-1, Counts 1-2)  The proposed

---

[3] The proposed second amended complaint included the substitution of Kevin McAleenan, the acting Secretary of the Department of Homeland Security at that time, for Kirstjen Nielsen, the former Secretary of the Department of Homeland Security.

second amended complaint also contained a request for mandamus as to the processing of the visa applications. (Dkt. No. 70-1, Count 3) Consistent with the amended complaint, the proposed second amended complaint also included allegations that defendants Light and Lipkind violated Darwish's Fourth and Fifth Amendment rights by detaining and questioning him on July 18, 2016, confiscating his Legal Permanent Resident card, and initiating removal proceedings and deportation charges against him.  (Dkt. No. 70-1, Counts 4 and 5)  The proposed second amended complaint sought to add the United States as the sole party to plaintiff's FTCA claim.  (Dkt. No. 70-1, Count 6)  Lastly, the proposed second amended complaint contained a request for a declaratory judgment as to all defendants.  (Dkt. No. 70-1, ¶¶93-95)

On December 5, 2019, defendants filed a response in opposition to plaintiff's motion to file a second amended complaint.[4]  (Dkt. Nos. 61-62)  Plaintiff filed a reply on February 3, 2020.   (Dkt. No. 70)   At the request of the Court, defendants filed a supplemental reply on August 4, 2020, addressing the status of the pending visa applications filed on behalf of Darwish's wife and two children (the "beneficiary visa applications").  (Dkt. Nos. 78, 79)

## DISCUSSION

### *Defendants' Motion to Dismiss the Amended Complaint*

"When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the

---

[4] The Court notes that the response in opposition to plaintiff's request to file a second amended complaint was made on behalf of Pompeo, the United States Department of State, the United States Department of Homeland Security and Chad Wolf, who is the current acting Secretary of the Department of Homeland Security.  As discussed further *infra*, neither Light nor Lipkind have appeared in this case.  Thus, defendants Light and Lipkind have not answered or otherwise moved against the amended complaint, nor have they responded to plaintiff's motion to file a second amended complaint.

motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint." *Brock v. Logsdon*, 19-CV-6082, 2019 U.S. Dist. LEXIS 215939 (WDNY Dec. 16, 2019); *quoting Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (EDNY 2016).

Here, Darwish has agreed to the dismissal of the causes of action in his amended complaint against the Secretary of State, the Secretary of the Department of Homeland Security, the United States Department of State, and the United States Department of Homeland Security which relate to his citizenship and passport applications. (Dkt. No. 70-1) The proposed second amended complaint purports to instead add various causes of action against these defendants related to the processing of the beneficiary visa applications. (*Id.*) Consistent with the amended complaint, the proposed second amended complaint also contains constitutional claims against individual defendants Light and Lipkind regarding the circumstances of Darwish's July 18, 2016 detention as well as the initiation of removal proceedings and deportation charges against him. (*Id.*) The proposed second amended complaint also seeks to add the United States as the sole defendant to the FTCA claim previously asserted in the amended complaint. (*Id.*)

In sum, all the claims in the amended complaint have either been abandoned by plaintiff or are incorporated in the proposed second amended complaint. Therefore, the Court will deny defendants' motion to dismiss the amended complaint as moot, and will address the merits of plaintiff's motion to file a second amended complaint.

## **_Plaintiff's Motion to File a Second Amendment Complaint_**

### _Discrepancies in the Proposed Second Amended Complaints_

Before addressing the merits of the motion to amend, the Court notes that plaintiff has submitted two versions of his proposed second amended complaint. The initial version was filed as an exhibit to plaintiff's motion to file a second amended complaint. (Dkt. No. 55-2) However, this initial version did not comply with Local Rule of Civil Procedure 15(b) for the Western District of New York, which requires that the original pleading be identified in the proposed pleading through the use of a word processing "redline" function or similar markings that are visible in both electronic and paper format. (_Id._) In his subsequent reply in support of his motion to amend, plaintiff filed another version of the proposed second amended complaint with the required redlining. (Dkt. No. 70-1) However, the initial version of the proposed second amended complaint and the redlined version of the proposed second amended complaint contain substantive differences. Specifically, the initial version contains additional counts and allegations which are absent from the redlined version. Plaintiff has made no attempt to explain these discrepancies.

For purposes of clarity and efficiency, and because Local Rule of Civil Procedure 15(b) requires a redlined version of an amended pleading, the Court has used the redlined version of the proposed second amended complaint as the operative pleading in making the instant recommendations as to plaintiff's motion to amend. Thus, the counts referred to below correspond to the redlined version of the proposed second amended complaint found at _Docket Number 70-1_. To the extent that the initial version of the proposed

7

second amended complaint found at *Docket Number 55-2* sets forth additional allegations or counts, the Court has made note of those claims and has addressed them.

### Motion to Amend Standard

Rule 15 of the Federal Rules of Civil Procedure provides that a court shall freely grant leave to amend a complaint "when justice so requires." *See* Fed. R. Civ. 15(a)(2).[5] Despite the liberal nature of this rule, a court has discretion to deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend.") "Futility of the amendment is a valid reason to deny the motion." *McInis v. New York*, 00 Civ. 1395, 2002 WL 31357806, at *1 (SDNY Oct. 17, 2002).

In order to determine whether an amendment is futile, courts are to apply the same standard as they do in deciding a motion to dismiss. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Luscente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") Thus, "futility may be shown by demonstrating that the proposed new pleading fails to state a cognizable claim and thus would be subject to dismissal under Rule 12(b)(6), or is otherwise facially inadequate." *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp.2d 4, 13-14 (SDNY 2012). For instance, leave to amend may be denied as futile where the amendment would be subject to dismissal for lack of subject matter jurisdiction. *Acquest Wehrle LLC v. United*

---

[5] Plaintiff's motion to file a second amended complaint was made well after the twenty-one day period during which a plaintiff may amend as of right. Defendants have not consented to an amendment of the complaint. Thus, leave of the Court is required. *See* Fed. R. Civ. P. 15(a).

*States*, 567 F. Supp. 2d 402, 412 (WDNY 2008).  Likewise, a party's failure to properly and timely exhaust jurisdictional administrative remedies is a good reason to deny leave to amend a complaint.  *Berry v. City of New York*, 00 Civ. 2834, 2002 WL 31045943, at *12 (SDNY June 11, 2002).

In making a futility determination, a court may consider the allegations in the complaint, as well as any documents attached to the complaint as exhibits or incorporated by reference.  *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 04 Civ. 2867, 2006 U.S. Dist. LEXIS 16402 (SDNY Mar. 31, 2006); *accord Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).  Documents that are "integral to the complaint," whereby the complaint "relies heavily upon [their] terms and effect," may also properly be considered.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Moreover, in considering dismissal based on subject matter jurisdiction, a court is permitted to consider materials outside the four corners of the complaint and may resolve disputed jurisdictional facts by referring to evidence outside the pleadings.  *See, e.g., Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (on a motion challenging the court's subject matter jurisdiction, the court may resolve the disputed jurisdictional issues by referring to evidence outside the pleadings, such as affidavits); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (a court may consider matters outside the pleadings when determining whether subject matter jurisdiction exists).

### The Proposed Amendments to Counts One, Two and Three are Futile

Counts One and Two of the proposed second amended complaint allege violations of the Administrative Procedures Act, the Immigration and Nationality Act and the Fifth

Amendment of the United States Constitution based upon the following allegations: (1) an unreasonable and unjust delay in processing and approving the 1-130 Petitions filed by Darwish is support of visa applications for his wife and children; and (2) the continued delay and failure to adjudicate the beneficiary visa applications filed on behalf of Darwish's wife and children. (Dkt. No. 70-1, ¶35-56) Count Three seeks mandamus, pursuant to 28 U.S.C. §1361, in the form of an order compelling defendants to adjudicate the beneficiary visa applications. (Dkt. No. 70-1, ¶¶57-59) For the reasons stated below, the Court lacks subject matter jurisdiction over the allegations in Counts One, Two or Three. Because these Counts fail to state a claim for which relief can be granted, the proposed amendments are futile, and should be denied.

<u>*Facts and Law Relevant to Counts One, Two and Three*</u>

A United States citizen may file an I-130 immigration visa petition on behalf of their immediate relatives in order to obtain a visa for that relative. *See* 8 U.S.C. §1154. I-130 petitions are processed exclusively by United States Citizenship and Immigration Services ("USCIS"). *See Ahmed v. Cissna*, 327 F. Supp. 3d 650, 658 (SDNY 2018). The approval of an I-130 petition "results in the beneficiary of the petition being classified as an immediate relative for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status." *Id.* Instead, the alien beneficiary, once approved by USCIS, must still apply for a visa with the State Department." *Id.*

Once an immigrant visa petition is approved by USCIS, the National Visa Center ("NVC") performs clerical processing of the immigrant visa applications on behalf of the United States Department of State. (Dkt. No. 79, ¶2)[6] This includes the collection of fees and documents required by law to process immigrant visa applications. (*Id.*) To that end, when a petition approved by USCIS becomes current, or is likely to become current within one year, the NVC initiates immigrant visa pre-processing, which involves the collection of fees, forms, and documents from the applicants, petitioners, and sponsors. (*Id.* at ¶¶2-4)  Once (1) all the required fees have been paid; (2) all required documents have been provided to NVC; and (3) a visa number is available, NVC will schedule an appointment for the visa applicant to appear for an interview with a consular officer to execute the application. (*Id.* at ¶5)  The interview occurs at a U.S. embassy or consulate overseas. (*Id.*)

On July 21, 2016, Darwish filed three I-130 Petitions.  (Dkt. No. 70-1, ¶5) Specifically, the petitions were filed on behalf of (1) Suha Omar Abughanieh, Darwish's wife, born on October 18, 1976 in Jordan; (2) Zeina Darwish, Darwish's child, born on April 3, 2011 in Jordan; and (3) Zeyad Mohammad Darwish, Darwish's child, born on December 13, 2007 in Jordan. (Dkt. No. 55-2, ¶3; Dkt. No. 79, ¶¶6-8)  All three I-130 Petitions were approved by USCIS on March 18, 2019. (Dkt. No. 79, ¶¶6-8; Dkt. No. 70-1, ¶5) Following USCIS's approval of the I-130 Petitions, Zeina Darwish's application for an immigrant visa began pending at the NVC on April 19, 2019.  (Dkt. No. 79, ¶6)

---

[6] The facts discussed herein regarding NVC's procedure for processing visa applications as well as the status of the beneficiary visa applications in this case are taken from the declaration of Rebecca Austin, submitted in support of defendants' opposition to the motion to amend the complaint. (Dkt. No. 79) Austin is employed by the United States Department of State as the Assistant Director of the NVC, which is part of the Visa Services Directorate within the Bureau of Consular Affairs. (Dkt. No. 79, ¶1)

Likewise, Zeyad Mohammad Darwish's application for an immigrant visa began pending at the NVC on May 20, 2019. (*Id.* at ¶7)   However, a Form DS-260, Application for Immigrant Visa and Alien Registration ("DS-260 Form"), has not been submitted on behalf of either Zeina Darwish or Zeyad Mohammad Darwish in support of their petitions. (*Id.*) Thus, Darwish's children, or their representatives, have not yet submitted all the required documentation necessary to process their applications. (*Id.*)  Suha Omar Abughanieh's application for an immigrant visa began pending at the NVC on April 19, 2019. (*Id.* at ¶8) On June 18, 2020, Ms. Abughanieh filed the final documentation required to process her application. (*Id.*)  On July 9, 2020, the case was determined to be documentarily qualified and Ms. Abughanieh is now ready to be scheduled for an interview. (*Id.*)  However, the U.S. Embassy in Amman, Jordan is currently unable to conduct routine visa interviews due to the ongoing COVID-19 global health pandemic. (Dkt. No. 78, pgs. 6-9)

<u>All Claims Related to the I-130 Petitions are Moot</u>

"A case becomes moot and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *quoting Murphy v. Hunt*, 455 U.S. 478, 481 (1982).  If a controversy is moot, the court lacks subject matter jurisdiction and must dismiss the case. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

Here, plaintiff admits that the I-130 Petitions were approved by USCIS on March 18, 2019. (Dkt. No. 55-2, ¶46; Dkt. No. 70-1, ¶4)  Information submitted by defendants in opposition to the motion to amend confirms that the I-130 Petitions filed by Darwish on behalf of his wife and children have been approved. (Dkt. No. 79, ¶¶6-8)  Thus, to the

extent that Counts One, Two and Three of the proposed second amended complaint are premised on a delay in processing the 1-130 Petitions, the causes of action are moot and the Court lacks subject matter jurisdiction over them. *See Khanom v. Kerry*, 37 F. Supp. 3d 567, 574 (EDNY 2014) (dismissing complaint arising from government agency's failure to act on a pending immigrant visa petition for lack of subject matter jurisdiction because the petition was adjudicated after the action commenced); *Lin v. Holder*, 12-CV-4245, 2013 U.S. Dist. LEXIS 108510 (EDNY July 30, 2013) (complaint alleging unreasonable delay and failure to process application for adjustment of immigration status was dismissed for lack of subject matter jurisdiction where, after complaint was filed, plaintiff's application was denied); *Wu v. Johnson*, 16-CV-4523, 2018 U.S. Dist. LEXIS 38508 (EDNY Feb. 27, 2017) ("In the immigration and naturalization context, courts have dismissed cases as moot when the agency, such as USCIS, to which the plaintiff has applied provides the relief sought in the complaint prior to the court's adjudication.")

Further, even if the portions of Counts One, Two and Three relying on the failure to timely process I-130 Petitions were not moot, the amendments would still be futile because plaintiff does not name a correct defendant. Specifically, none of the defendants named in the proposed second amended complaint are charged with processing I-130 petitions. As explained above, I-130 petitions are processed exclusively by USCIS, who is not a defendant in this case.[7]

---

[7] The initial version of plaintiff's proposed second amended complaint, found at *Docket No. 55-2*, also contained a "Fifth Amendment Procedural Due Process" claim based upon "defendants' failure to follow the standards established by 8 C.F.R. ¶103.2(a)(18)." (Dkt. No. 55-2, pgs. 13-14) Similarly, Count Two cites Section 103.2(a)(18) and alleges that "[d]efendants withheld adjudicating the [I-130 petitions] because of the wrongful and malicious initiations of removal proceedings against [p]laintiff" and violated his due process rights. (Dkt. No. 70-1, ¶¶46-56) Section 103.2(a)(18) of Title 8 of the Code of Federal Regulations explains when USCIS may withhold the adjudication of visa petitions. This regulation imposes obligations on USCIS and not upon any of the defendants named in the proposed second amended complaint. Thus, these allegations also fail to state a claim for which relief may be granted.

13

### *Plaintiff's Statutory Claims Related to the Processing of the Beneficiary Visa Applications Fail as a Matter of Law*

Having found that no cause of action exists based on USCIS's delay in processing the I-130 Petitions, the Court next considers whether plaintiff has sufficiently stated a claim as to the alleged delay in processing the beneficiary visa applications filed on behalf of Darwish's wife and children, which are currently pending before the NVC.  As noted above, the proposed second amended complaint alleged that defendants' continued delay in adjudicating the beneficiary visa applications violates the Administrative Procedures Act and the Immigration and Nationality Act.  Plaintiff also seeks mandamus pursuant to 28 U.S.C. §1361, in the form of an order compelling defendants to process the visa application.  As explained below, the Court lacks subject matter jurisdiction over these statutory claims.  Thus, plaintiff's request to amend Counts One, Two and Three to include these statutory claims is futile.

Case law in this Circuit makes clear that statutory claims based upon either a failure or a delay in issuing a visa are barred by the doctrine of consular nonreviewability. *See Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) ("[N]o jurisdictional basis exists for review of the action of the American Consul...suspending or denying the issuance of immigration visas.  It is well-settled that the judiciary will not interfer with the visa-issuing process."); *Gogilashvili v. Holder*, 11-CV-01502, 2012 U.S. Dist. LEXIS 87832 (EDNY June 25, 2012) (doctrine of consular nonreviewability precludes judicial review of visa decisions "not only under the Immigration and Nationality Act, but also under other jurisdictional statutes, such as the Administrative Procedures Act and the Declaratory Judgment Act."); *Zhang v. U.S. Citizenship & Immigration Serv.*, 05-CV-4086, 2005 U.S. Dist. LEXIS 26805 (SDNY Nov. 8, 2005) (finding no basis to "overcome the jurisdictional

bar to review of consular decisions denying visas by relying on the Declaratory Judgment Act, the Administrative Procedures Act, or by seeking mandamus to require the consulate to decide his visa petitions."). Moreover, the Second Circuit recognizes the doctrine of consular nonreviewability not only where "a plaintiff challenges an official's discretionary decision to approve or deny a visa application," but also "where a plaintiff seeks to compel an official to simply adjudicate a visa application." *Abdo v. Tillerson*, 17 CIV 7519, 2019 WL 464819, at *3 (SDNY Feb. 5, 2019). *See also Li v. Chertoff*, 06 CIV 13679, 2007 WL 541974 (SDNY Feb. 16, 2007) (court lacked subject matter jurisdiction to compel the government to adjudicate the pending visa application).

Here, Counts One, Two and Three of the proposed second amended complaint allege statutory violations as a result of defendants' "unreasonable and unjust delay" in processing the beneficiary visa applications. Based upon the case law cited above, it is evident that the Court lacks subject matter jurisdiction over these claims. Moreover, plaintiff's allegations that the delay is unjust or unreasonable because it is somehow related to his "false prosecution" in immigration court does not alter the jurisdictional analysis. In fact, consular nonreviewability applies to bar judicial review of an officer's decision to grant or deny a visa, even where the decision is "erroneous, arbitrary, or contrary to the agency's regulations." *Aquino v. Immigration and Customs Enforcement*, 09-CV-0912, 2009 U.S. Dist. LEXIS 42301 (EDNY May 18, 2009). *See Burrafato v. U.S. Dept. of State*, 523 F.2d 554, n. 2 (2d Cir. 1975) ("[W]hether the consul has acted reasonably or unreasonably is not for us to determine, [i]t it beyond the jurisdiction of this

15

court.")[8]

### *Plaintiff's Constitutional Claims Related to the Processing of the Beneficiary Visa Applications Fail as a Matter of Law*

Having found that plaintiff cannot assert a statutory claim related to a delay in processing the beneficiary visa applications, the Court next considers whether plaintiff's proposed constitutional claims related to the processing of the beneficiary visa applications may proceed. The Second Circuit has recognized a limited exception to the doctrine of consular nonreviewability where the denial of a visa is alleged to have violated certain constitutional rights of a United States citizen. *American Academy of Religion v. Napolitano*, 573 F.3d 115, 123-25 (2d Cir. 2009). The Second Circuit has applied this narrow exception where a plaintiff alleges that the denial of a visa violated the plaintiff's First Amendment right to present views in the United States. *Id.* ("where a plaintiff...asserts a First Amendment claim to have a visa applicant present views in this country, we should [not apply consular nonreviewability] to a consular officer's denial of a visa.").

Here, Darwish has not raised a constitutional challenge which warrants the Court's application of the exception to the doctrine of consular nonreviewability. Darwish does not allege that the failure to process the beneficiary visa applications of his family members violates his First Amendment rights. Instead, he argues that the failure to

---

[8] In addition to the lack of subject matter jurisdiction, plaintiff's claim under the Administrative Procedures Act ("APA") is unripe. The APA requires that agencies, "within a reasonable time...shall proceed to conclude a matter presented to it." 5 U.S.C. ¶555(b). Further, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. ¶706(1). The beneficiary visa applications have not, at this time, been unlawfully withheld or unreasonably delayed. Zeina Darwish and Zeyad Darwish have not submitted the required paperwork, namely their DS-260 Forms. Thus, their applications are incomplete and any delay in processing is not attributable to defendants. Ms. Abughanieh supplied the forms required to complete her application less than two months ago. The scheduling of her interview is delayed solely as the result of a global health pandemic.

process the beneficiary visa applications violates his right to due process and equal protection under the Fifth Amendment. (Dkt. No. 70-1, ¶36) Darwish specifically contends that he has a fundamental right to "family unification" and to "reside with his wife and children." (Dkt. No. 70-1, ¶¶6-7, 39, 55-56) In *Zeng v. Pompeo*, the Second Circuit acknowledged that it has "not decided whether [the] narrow exception to the consular nonreviewability doctrine applies to constitutional challenges other than First Amendment challenges, such as due process challenges…[n]or ha[s] [it] ever decided whether a citizen has a due process right to live in this country with their spouse." 740 Fed. Appx. 9 (2d Cir. 2018).

While the Second Circuit has not ruled conclusively on this issue, other district courts in this Circuit have found these types of constitutional claims to be insufficient to invoke the exception to the consular nonreviewability doctrine. For example, in *Alhardi v. Miller*, the Eastern District of New York Court dismissed plaintiffs' claim that defendants violated their procedural due process rights by failing to provide notice and or an opportunity to be heard before depriving plaintiffs of their immigrant visas. 368 F. Supp.3d 527 (EDNY 2019). Specifically, plaintiffs argued that the denial of their visas deprived them of a liberty interest in making personal choices about family matters, including whom to reside with. (*Id.*) The *Alhardi* Court rejected this argument and recognized that "the long practice of regulating familial immigration decisions…precludes plaintiffs' claims that the denial of their visas [deprives] them of a fundamental liberty interest." *Id.* at 565. *See also Khanom*, 37 F. Supp. 3d at 577, n. 10 (finding that the court did not have subject matter jurisdiction to require the adjudication and issuance of immigrant visas under a number of different statutes and noting that "[p]laintiff's conclusory allegation that

[d]efendants' actions violated the Fifth Amendment [was] insufficient to state a claim upon which relief may be granted pursuant to either the Due Process Clause or the Equal Protection Clause"). Similarly, in *Gogilashvili*, the Eastern District of New York Court refused to recognize a constitutional exception to the doctrine of consular nonreviewability based on a plaintiff's claim that denial of her husband's visa application violated her right to personal freedom in matters of marriage and family life. 2012 U.S. Dist. LEXIS 87832, *15 ("No constitutional right of a citizen spouse is violated by deportation or denial of a visa application of his or her alien spouse.") The *Gogilashvili* Court reasoned that "the breath of the nonreviewability rule would be significantly curtailed by acknowledging such a right…if marriage to a United States citizen automatically afforded such a review, a challenge to an allegedly erroneous visa application could be restyled as an affront to the citizen spouse's constitutional rights [and] this circuit has historically rejected such rights." *Id*. This Court agrees with the reasoning set forth by the district courts in *Alhardi*, *Khanom*, and *Gogilashvili*, and finds no basis to apply the limited exception to the doctrine of consular nonreviewability to Darwish's claims that failure to process visa applications on behalf of his wife and children violated his constitutional right to family unification.[9]

---

[9] Even if plaintiff had successfully raised a constitutional claim, which he has not, the Court would be reluctant to apply the exception to the doctrine of consular nonreviewability here, where the beneficiary visa applications have not been denied. Instead, they remain pending before the NVC. Because all three applications may still be approved, there is a question as to whether any actual injury has occurred which would make plaintiff's constitutional claim, if he had one, ripe for adjudication. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) (The ripeness doctrine prevents courts from "entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution."); *Li v. Chertoff*, 06 Civ. 13679, 2007 U.S. Dist. LEXIS 11152 (SDNY Feb. 15, 2007) (noting that "no constitutional right of a citizen spouse is violated by [the] deportation of his or her alien spouse" and thus "it cannot be that the mere failure to 'act upon' the visa at issue violates any of plaintiff's constitutional rights.")

Moreover, even if the Court were to apply the exception described above, plaintiff's constitutional claims would still fail. The Supreme Court has made clear that the exception to the doctrine of consular nonreviewability permits courts to engage in a very narrow review of the consular officer's denial of the visa. *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). To that end, courts may consider *only* whether the government officer processing the visa acted "on the basis of a facially legitimate and bona fide reason." *Id.* Further, courts are not permitted to "look behind the [agency's] exercise of discretion, nor test it by balancing its justification against the [constitutional] interest." (*Id.*) Here, NVC has provided a bona fide and facially legitimate reason for any alleged "delay" in processing the beneficiary visa applications. Specifically, Darwish's children, or their representatives, have not supplied the required documentation. Darwish's wife only submitted the final documentation less than two months ago, and the interview process as to all visa applicants has been stayed due to the ongoing global health pandemic. In light of the valid reasons cited by NVC, the Court will not look behind the agency's exercise of discretion in processing the beneficiary visa applications. Darwish's claims that the delay in processing of his family members' applications is somehow related to his prior detention and removal proceedings is wholly speculative. Moreover, his claim is belied by the fact that the NVC has taken affirmative steps to process the applications, and that any delays appear to be attributable to either the applicants' delayed submission of documents or the current global health pandemic. *See Zeng*, 740 Fed. Appx. at 11 (district court did not err in denying motion to amend complaint to state a due process claim based on U.S. Consulate's decision to deny plaintiff's wife a visa where "the Consulate provided a *bona fide* and facially legitimate reason for denying [the] visa—

namely, she had made a material misrepresentation about her employment when applying for the visa"); *Kuar v. Boente*, 16-CV-6252, 2017 U.S. Dist. LEXIS 16352 (WDNY Feb. 6, 2017) (motion to dismiss complaint alleging wrongful denial of visa application granted based on doctrine of consular nonreviewability, and noting that "even if the limited constitutional exception did apply in this case the record clearly established that the Government provided a 'facially legitimate and bona fide reason' for its decision.").

In sum, none of the allegations in Counts One, Two or Three of the proposed second amended complaint assert a claim for which relief may be granted. Any amendment adding these counts would be futile. For these reasons, plaintiff's motion to amend the complaint to add Counts One, Two and Three should be denied. [10]

### *The Proposed Amendments to Counts Four and Five May Proceed*

Counts Four and Five of the Proposed Second Amended Complaint, brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), allege that defendants Light and Lipkind violated Darwish's Fourth and Fifth Amendment rights. (Dkt. No. 70-1, ¶¶61-85) These allegations encompass Darwish's detention and questioning on July 18, 2016 upon his return to the United States from Toronto, Ontario. (*Id.*) They also encompass the confiscation of his Legal

---

[10] The initial version of plaintiff's proposed second amended complaint, found at *Docket No. 55-2*, also contained a "Fifth Amendment Substantive Due Process Claim". (Dkt. No. 55-1, pg. 14) These allegations are premised on plaintiff's "fundamental right to family unification", defendants' delay in approving the I-130 Petitions, and the July 18, 2016 detention. As discussed previously, all claims based on the I-130 petitions are moot, claims related to the INA and APA are precluded by the doctrine of consular nonreviewability, and no exception to the doctrine applies. Any claims regarding the incident on July 18, 2016 and subsequent removal or deportation proceedings are duplicative of the claims made in Counts Four, Five and Six of the proposed second amended complaint. Finally, to the extent plaintiff is attempting to assert constitutional tort claims against the United States or its agencies based upon a Fifth Amendment "right to family unification" as a result of the July 18, 2016 deportation, there has been no waiver of sovereign immunity for damages claims against the United States or its agencies for alleged violations of plaintiff's constitutional rights. *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994).

Permanent Resident card and the initiation of removal proceedings against him on July 18, 2016, as well as the filing of "Additional Charges of Inadmissibility/Deportability" against him on May 5, 2017. (*Id.*)

The Court issued summonses for defendants Light and Lipkind on February 1, 2019. (Dkt. No. 28)  However, plaintiff did not serve Light and Lipkind with the amended complaint until almost a year later, on January 8, 2020. (Dkt. Nos. 67, 68)  Thus, service was untimely pursuant to Federal Rule of Civil Procedure Rule 4, which requires service on a defendant within 90 days of the filing of a complaint.  *See* Fed. R. Civ. P. 4(m).  To date, neither Light nor Lipkind have appeared in this case.  Since Light and Lipkind have not moved against the amended complaint nor responded to plaintiff's motion to file a second amended complaint, the Court will not make a determination, at this time, as to whether the allegations in Counts Four and Five of the proposed second amended complaint have stated a claim upon which relief may be granted as to defendants Light and Lipkind.  Instead, the Court will permit plaintiff to amend the complaint as to Counts Four and Five as proposed in *Docket No. 70-1*, despite the prior defect in service.[11]  Upon plaintiff's filing of the second amended complaint and the individual defendants having appeared in this action, Light and Lipkind shall respond by either filing an answer or moving to dismiss the claims against them.

---

[11] Plaintiff has moved for an enlargement of time to complete service on Light and Lipkind through January 8, 2020.  (Dkt. No. 69) "[I]f the plaintiff shows good cause for the failure [to timely serve], the court must extend the time for service for an appropriate period. *See* Fed. R. Civ. P. 4(m).  Here, plaintiff's counsel cites law office turn-over and her mistaken belief that defendants had been properly and timely served. (*Id.*)  The Court grants plaintiff's motion to enlarge the time for service and deems the prior service timely.

_Plaintiff May Replead the Amendment to Count Six_

Count Six of the proposed second amended complaint asserts a violation of the Federal Tort Claims Act ("FTCA") against the United States. (Dkt. No. 70-1, ¶¶86-92) Specifically, Darwish alleges that Department of Homeland Security officers interrogated him on July 18, 2016 in violation of his right to counsel, accused him of crimes he did not commit, confiscated his Legal Permanent Resident card, knowingly filed false charges against him, and initiated removal proceedings despite knowing that he was not removable. (_Id._) Plaintiff claims that these actions constitute false imprisonment, false arrest, abuse of process, and malicious prosecution.[12] (_Id._)

The FTCA provides for a waiver of sovereign immunity for injuries arising from the tortious conduct of federal officers or agents acting within the scope of their office or employment. 28 U.S.C. §1346(b)(1). Before bringing a claim in federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing an administrative claim for monetary damages with the appropriate federal government agency. _Reynolds v. Petrucci_, 20-CV-3523, 2020 U.S. Dist. LEXIS 136751 (SDNY July 27, 2020); _accord_ 28 U.S.C. §2675(a). The administrative claim must be in writing; must specify the amount of damages sought; and must be filed within two years of the claim's accrual. _Reynolds_, 2020 US Dist. LEXIS 136751, *10; _accord_ 28 U.S.C. §§2401(b), 2675(a). Plaintiff must also show, as a prerequisite to filing a federal lawsuit, that the agency issued a final denial of the claim in writing, or that the agency failed to dispose of

---

[12] The initial version of plaintiff's proposed second amended complaint, found at _Docket No. 55-2_, also alleged intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under New York state law as part of the FTCA claim. (Dkt. No. 55-2, pgs. 20-21) Because the underlying facts are the same in both versions, the Court's recommendations herein as to Count Six encompass all FTCA allegations in both the redlined version (Count Six) and the initial version (Count Eight) of plaintiff's proposed second amended complaint.

the claim within six months after its filing.  *See* 28 U.S.C. §2675(a).  "Failure to exhaust the agency's administrative remedies within the statute of limitations will render the claim 'forever barred'."  *Roberson v. Greater Hudson Valley Family Health Ctr., Inc.*, 1:17-cv-7325, 2018 U.S. Dist. LEXIS 98838 (SDNY June 12, 2018) (internal citations omitted). *See also Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (the exhaustion requirement of the FTCA is jurisdictional and cannot be waived). It is plaintiff's burden "to both plead and prove compliance with the [exhaustion] requirements of the FTCA."  *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).  This requirement is non-waivable.  *Adams by Adams v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 318, 321 (2d Cir. 1986).

Here, the proposed second amended complaint asserts no facts to suggest that plaintiff filed an administrative claim with the appropriate federal agency prior to commencing this lawsuit, or that he otherwise exhausted his administrative remedies under the FTCA.  Further, representatives from the United States Department of State and the United States Customs and Border Protection Agency submitted declarations in July of 2019 indicating that Darwish had not, at that time, filed an administrative claim with either agency.  (Dkt. No. 42, Exhs. E and F)  However, in his most recent memorandum of law, submitted on February 3, 2020, plaintiff states that he filed an administrative claim with the Office of General Counsel in Washington, D.C. on October 23, 2019.  (Dkt. No. 70, pgs. 4-5)

Plaintiff's conclusory statement in a memorandum of law is insufficient to meet his burden to plead exhaustion of administrative remedies under the FTCA.  However, since leave to amend is generally freely granted absent good cause, and because a final

23

agency determination had likely not been issued at the time of plaintiff's last filing in support of his request to amend, the Court recommends that plaintiff be provided a final opportunity to correctly plead the FTCA claim in Count Six.[13]  The second amended complaint must replead Count Six to allege sufficient facts demonstrating that plaintiff has complied with all jurisdictional requirements of the FTCA.  These facts should include the date of the administrative claim, the agency where the complaint was filed, the contents of the claim including whether it requested monetary damages, and the outcome of the claim.  It is noted that failure to include details that plaintiff properly complied with administrative exhaustion requirements will provide a basis for defendant to move to dismiss Count Six for lack of subject matter jurisdiction.[14]

For these reasons, the Court recommends that plaintiff be permitted to amend his complaint to include Count Six, provided that plaintiff include allegations demonstrating that he has fully exhausted his administrative remedies under the FTCA.

### *The Proposed Amendment to Count Seven is Futile*[15]

Count Seven of the proposed second amended complaint seeks a declaratory judgment pursuant to Section 2201 of Title 28 of the United States Code based on plaintiff's allegations that defendants have unreasonably delayed processing the I-130

---

[13] In his memorandum submitted to the Court on February 3, 2020, plaintiff acknowledged that he had not yet received a final determination as to his administrative claim nor had six months elapsed since he filed the claim on October 23, 2019. (Dkt. No. 70, pgs. 4-5)  However, plaintiff argued that the allegations were not precluded on any other basis, and noted his "right to refile the claim in due course."  *Id.*

[14] Defendants also argue that portions of plaintiff's FTCA claim are inappropriate because they allege constitutional torts against the United States. (Dkt. No. 61, pgs. 17-18)  *See Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) (the United States has not waived its sovereign immunity with respect to constitutional tort claims).  The Court does not address the merits of this argument but notes that it may be raised as a defense by the United States should plaintiff show that he has exhausted his administrative remedies as to Count Six.  Likewise, the Court does not address the timeless of plaintiff's FTCA claim or when his alleged injuries accrued, but notes that these may also be relevant defenses.

[15] Plaintiff mislabels his request for a declaratory judgment as Count Six and it should be properly labeled as Count Seven.

Petitions, violated his right to due process in failing to adjudicate the beneficiary visa applications, violated his right to due process by filing false charges against him and placing him in removal proceedings, and violated his Fourth Amendment rights prohibiting illegal search, seizure, and unlawful detention.

The purpose of a declaratory judgment is "to clarify and settle disputed legal relationships and to relieve uncertainly, insecurity, and controversy." *S.E.C. v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 388-89. However, "declaratory judgment is inappropriate were the moving party seeks to adjudicate past conduct." *Id.*; *citing Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. International Wire Group, Inc.*, 2003 WL 21277114 at *5 (SDNY June 2, 2003) ("There is no basis for declaratory relief where only past acts are involved.")

Here, plaintiff's request for declaratory judgment involves almost exclusively past conduct, including the incident on July 18, 2016, the removal proceedings, the filing of false deportation charges against him, and the delay in processing the I-130 Petitions. A declaratory judgement is not available as to any of these claims relating to past conduct. Plaintiff further argues that a declaratory judgment is necessary because he continues to be harmed by defendants' failure to adjudicate the beneficiary visa applications on behalf of his wife and children. For all of the same reasons the Court previously found that the proposed amendments to Counts One, Two and Three are futile for lack of subject matter jurisdiction, plaintiff is not entitled to a declaratory judgment addressing the failure to process the beneficiary visa applications. *See Springfield Hosp. v. Hafmann*, 488 F. App'x 534, 535 (2d Cir. 2012) (holding that the plaintiff "cannot maintain an action for a declaratory judgment without an underlying federal cause of action."); *In re Joint E. & S.*

*Dist. Asbestos Litig.*, 14 F.3d at 731 (2d Cir. 1993) ("the Declaratory Judgment Act is not a source of federal substantive rights.").[16] For these reasons, plaintiff's request to amend Count Seven to request a declaratory judgment is futile, and should be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that (1) defendants' motion to dismiss the amended complaint be denied as moot (Dkt. No. 42); (2) plaintiff's motion to file a second amended complaint be granted in part and denied in part (Dkt. No. 55); and (3) plaintiff's motion for an enlargement of time to serve summonses and the second amended complaint on defendants Light and Lipkind be granted (Dkt. No. 69). As stated in detail above, it is recommended that plaintiff's motion to file a second amended complaint be granted as to Counts Four, Five and Six, but otherwise denied. Should no objections be filed to the instant Report and Recommendation, plaintiff shall file the second amended complaint, consistent with the directives herein, on or before September 1, 2020. Defendants shall answer or otherwise move against the second amended complaint on or before September 22, 2020.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

---

[16] Plaintiff's initial proposed second amended complaint, found at *Docket No. 55-2*, also requested a declaratory judgment against defendants based upon the "violation of his Fifth Amendment right to reside with his wife and children." (Dkt. No. 55-1, pg. 22) This allegation fails to state a claim on which relief may be granted. Sovereign immunity prevents plaintiff from asserting a Fifth Amendment claim against the United States or its agencies. *See Meyer*, 510 U.S. at 477 (constitutional tort claims are not cognizable under 42 U.S.C. §1346(b), and so such claims are not within the statute's waiver of sovereign immunity). Further, there are no allegations that any federal employee was personally involved in violating plaintiff's right to reside with his wife and children, and therefore plaintiff cannot assert a *Bivens* claim against any of the individual defendants on this basis. *Haley v. Tryon*, 12 F. Supp. 3d 573 (WDNY 2014) (to establish a *Bivens* claim, a plaintiff must plausibly allege that the individual defendants participated actively in the alleged constitutional violation).

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988)*.

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:        August 19, 2020
              Buffalo, New York

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge