UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMMED DARWISH,

           Plaintiff,

     v.

                                      18-CV-01370-LJV-MJR
                                      DECISION & ORDER

MICHAEL POMPEO, *et al.*,

           Defendants.

_____

     On November 29, 2018, the plaintiff, Mohammed Darwish, commenced this action under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537; *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971); and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671.  Docket Item 1.  He alleges that when he was returning to the United States from Toronto, Canada, on July 18, 2016, defendant James Light unlawfully detained and questioned him at the border and defendant Andrew Lipkind wrongfully pursued removal proceedings against him.  Docket Item 91 at ¶¶ 8, 11, 16-18.  Both acts, he alleges, were based on two faulty premises: that Darwish was not a United States citizen and that he had been convicted of certain crimes.  *Id.* at ¶¶ 12-14, 17-18.

     Shortly after commencing this action, Darwish filed an amended complaint ("first amended complaint") on December 7, 2018.  Docket Item 17.  The defendants then moved to dismiss the first amended complaint, Docket Item 42, but while that motion was pending, Darwish moved to file a second amended complaint, Docket Item 55.

Darwish also moved for an enlargement of time in which to serve the second amended complaint on defendants Light and Lipkind.  Docket Item 69.

In the meantime, the case had been referred to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 57.  On August 19, 2020, Judge Roemer issued a Report and Recommendation ("R&R") finding that Darwish's motion to file a second amended complaint, Docket Item 55, should be granted in part and denied in part and that Darwish's motion for an enlargement of time to serve defendants Light and Lipkind, Docket Item 69, should be granted.  Docket Item 80.  More specifically, Judge Roemer recommended that this Court permit Darwish to proceed on his *Bivens* claims against defendants Light and Lipkind and to replead his FTCA claims.  *Id.*  But Judge Roemer also observed that the proposed second amended complaint asserted no facts demonstrating that Darwish had exhausted his administrative remedies as required by the FTCA.  *Id.*  In the R&R, Judge Roemer therefore instructed Darwish to allege facts sufficient to demonstrate compliance with the FTCA's jurisdictional requirements in any second amended complaint.  *Id.*  On October 9, 2020, this Court adopted the R&R in full.  Docket Item 85.

On November 16, 2020, Darwish filed his second amended complaint.  Docket Item 91.  In his second amended complaint, Darwish repeated his *Bivens* claims against Light and Lipkind for violations of his rights under the Fourth and Fifth Amendments and asserted an FTCA claim against the United States for malicious prosecution.  *Id.*  The defendants then moved to dismiss the second amended complaint.  Docket Items 94-106.  On March 26, 2021, Darwish responded, Docket Items 113-115, 117, and on April 28, 2021, the defendants replied, Docket Items 118-120.

Judge Roemer held oral argument, and the parties filed post-argument letters. Docket Items 121-123, 125-127. On August 3, 2021, Judge Roemer issued an R&R finding that (1) the defendants' motions to dismiss based on insufficient service of process should be denied;[1] (2) Darwish's FTCA claim against the United States should be dismissed without prejudice for lack of subject matter jurisdiction; and (3) Darwish's *Bivens* claims against Light and Lipkind should be dismissed in their entirety for failure to state a claim on which relief may be granted. Docket Item 128.

On August 27, 2021, Darwish objected to the R&R.[2] Docket Item 132. On October 6, 2021, the defendants responded, Docket Items 135-137, and on October 27, 2021, Darwish replied, Docket Items 138-140.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, responses, and replies; and the materials submitted to Judge

---

[1] In addition to filing a response to the motions to dismiss, Darwish also cross-moved for an enlargement of time to complete service. Docket Item 112. Judge Roemer found that service should be deemed timely against the United States. Docket Item 128 at 13-14. Judge Roemer also found that Darwish properly served Light and Lipkind and that even if he had not, the Court would extend the time to do so. *Id.* at 15-16. Therefore, he recommended denying the defendants' motions to dismiss on the basis of insufficient service. *Id.* at 14-17. No party objected to Judge Roemer's findings or recommendations on this issue. In any event, this Court agrees with Judge Roemer and adopts the R&R in this regard.

[2] Concurrent with his objections, Darwish also filed a motion for leave to file objections in excess of the page limit. Docket Item 131. That motion is granted.

Roemer.  Based on that *de novo* review, the Court accepts and adopts Judge Roemer's

recommendations to grant the defendants' motions to dismiss.

## FACTUAL BACKGROUND[3]

Darwish "was born [in] Jerusalem on April 4, 1962."  Docket Item 91 at ¶ 33.  He

entered the United States in 1980 as a legal permanent resident and now is a United

States citizen.  *Id.* at ¶ 2.  On July 18, 2016, Darwish and his brother-in-law, Mohammed

Mustafa, were returning to the United States after a short trip to Toronto when Customs

and Border Protection ("CBP") agents detained Darwish at a point of entry near Buffalo,

New York.  *Id.* at ¶¶ 8, 12, 35.

At that time, Darwish had applied for a United States passport and a certificate

documenting his United States citizenship, and those applications were pending.  *Id.* at

¶ 9.  He informed the CBP agents about his applications, which would have been noted

in CBP records.  *Id.*  In fact, CBP would have had proof that Darwish was a legal

permanent resident.  *Id.* at ¶ 10.  Despite this, CBP Officer Light detained Darwish for

more than twenty-four hours and confiscated Darwish's legal permanent resident card.

*Id.* at ¶ 11.

During Darwish's detention and interrogation, Light accused Darwish of having

criminal convictions, including a felony; said that Darwish was not a United States

citizen; and questioned Darwish about his Muslim affiliations.  *Id.* at ¶¶ 11-12, 14.  For

---

[3] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  These facts therefore are taken from Darwish's second amended complaint, Docket Item 91.

example, Light asked Darwish about the number of wives Darwish had, about Darwish's association with the Muslim community, and whether Darwish belonged to a mosque. *Id.* at ¶ 37.  Light never "advis[ed] [Darwish] of his right to counsel."  *Id.*

Darwish and his brother-in-law tried to explain to Light that Darwish, through his father, was a United States citizen and that Darwish did not commit any of the crimes Light referenced.  *Id.* at ¶¶ 12-14.  And Light would have had "direct access to governmental records showing that [Darwish] did not commit those crimes."  *Id.* at ¶ 38. But Light simply replied that he could "deport [Darwish] immediately" and repeatedly asked Darwish whether he "want[ed] to be deported."  *Id.* at ¶ 14.

Darwish's attorney also tried to explain to CBP that Darwish was, in fact, a United States citizen.  The attorney called CBP's border crossing office and tried to provide evidence demonstrating Darwish's citizenship.  *Id.* at ¶ 16.  But CBP rebuffed counsel's efforts and said it would rely on only the records in its system.  *Id.*

Eventually, CBP and Light released Darwish.  *Id.* at ¶ 17.  But they also issued Darwish an I-862 Notice to Appear ("NTA"), charging him with being removable based on criminal convictions.  *Id.*  Light knew that Darwish did not commit those crimes, but he nevertheless issued the NTA because of Darwish's "[M]uslim identity."  *Id.* at ¶¶ 77-78.

About a year later, in May 2017, Immigration and Customs Enforcement ("ICE") Assistant Chief Counsel Lipkind issued a Form I-261, Additional Charges of Inadmissibility/Deportability, alleging that Darwish was removable based on crimes he did not commit.  *Id.* at ¶ 18.  Lipkind would have known that he was filing false charges

because the information available to him clearly established that Darwish did not commit those crimes. *Id.*

In fact, Darwish did not commit the crimes alleged in the NTA or the I-261; an individual named "*Ali* Darwish" committed the crimes. *Id.* (emphasis added). Neither the NTA nor the I-261 suggested that Darwish used the name "Ali Darwish." *Id.* at ¶ 72.

After Darwish's counsel presented evidence to the Immigration Court proving that Darwish was not the person who committed the crimes, Lipkind withdrew the charges, and ICE moved to dismiss the NTA and to terminate removal proceedings. *Id.* at ¶¶ 19-20. On February 6, 2019, the Immigration Court granted that request and terminated the proceedings. *Id.* at ¶ 20. After waiting four years, Darwish finally received his United States passport in March 2019, *id.* at ¶ 22; later in 2019, he also received a certificate documenting that he had acquired United States citizenship on February 11, 1980, *id.* at ¶ 23.

## LEGAL PRINCIPLES

### I.    SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), this Court does not have subject matter jurisdiction when it lacks the "statutory or constitutional power to adjudicate [a case or controversy]." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [courts] are not to draw inferences from the complaint favorable to

plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

## II.     FAILURE TO STATE A CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

## I.     FTCA CLAIM FOR MALICIOUS PROSECUTION

Darwish first contends that Judge Roemer erred in concluding that Darwish failed to exhaust his administrative remedies before bringing his FTCA claim for malicious prosecution.  Docket Item 132 at 10.  This Court disagrees—for reasons slightly different than Judge Roemer's.

The FTCA permits lawsuits against the United States for certain intentional torts, including abuse of process and malicious prosecution, based upon the "acts or omissions of investigative or law enforcement officers" of the United States government. *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (quoting 28 U.S.C. § 2860(h)). But before a plaintiff may file suit under the FTCA, he first must exhaust his

administrative remedies.  28 U.S.C. § 2675(a).  An action under the FTCA "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate [f]ederal agency," *id.*, and the agency has denied the claim either in writing or by failing to dispose of it within six months, *see id.*  In the context of the FTCA, "institute" means "begin" or "commence."  *See McNeil v. United States*, 508 U.S. 106, 112 (1993).  So a plaintiff must fully exhaust his administrative "remedies before invocation of the judicial process."  *See id.*

The purpose of the FTCA exhaustion requirement is to give federal agencies an exclusive window to consider settlement of FTCA claims.  *Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021).  The "requirement is jurisdictional and cannot be waived." *Id.* (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)).  When a plaintiff brings a lawsuit before he has fully exhausted his administrative remedies, the lawsuit must be dismissed without prejudice.  *Saleh v. Holder*, 470 F. App'x 43, 44 (2d Cir. 2012).  And that is so even if the plaintiff's FTCA claims become administratively exhausted while the lawsuit is pending.  *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) ("The requirement that prematurely filed FTCA claims be dismissed holds even when, as here, the FTCA claims would be ripe if re-filed at the date of the court's decision.").

On December 7, 2018, Darwish filed his first amended complaint and alleged an FTCA claim for abuse of process.  Docket Item 17 at ¶¶ 51-56.  But it was not until October 23, 2019, that Darwish filed an administrative complaint with the United States Department of Homeland Security ("DHS").  Docket Item 91 at ¶ 31.  Six days later, he moved to amend his complaint for the second time.  Docket Item 55.  The proposed

second amended complaint included several additional FTCA claims, including one for malicious prosecution.  Docket Item 55-2 at ¶ 95.  After this Court adopted Judge Roemer's R&R and granted leave to amend, Darwish filed the second amended complaint on November 16, 2020, and included FTCA claims for malicious prosecution, false arrest/false imprisonment, and abuse of process.[4]  Docket Item 91.

Darwish's FTCA claims became exhausted on April 23, 2020, six months after he filed his administrative complaint and DHS still had not responded to it.  *See id.* at ¶ 31. So the question is whether Darwish "instituted" his FTCA claim for malicious prosecution before that date.  *See* 28 U.S.C. § 2675(a).  If he did, his claim must be dismissed without prejudice.

Judge Roemer found that Darwish initiated his FTCA claim in his first amended complaint filed on December 7, 2018, because that complaint includes an FTCA claim for abuse of process based on the same facts and circumstances as his present malicious prosecution claim.  Docket Item 128 at 21 & n.17.  Darwish objects to the conclusion that his malicious prosecution claim is based on the same facts and circumstances as his abuse of process claim because, unlike abuse of process, a claim for malicious prosecution does not accrue until termination of the underlying proceedings.  *See* Docket Item 132 at 11.  Therefore, Darwish argues, he did not initiate

_____

[4] In Darwish's response to the United States' motion to dismiss, he acknowledged that his claims for false arrest/false imprisonment and abuse of process were time-barred, and he did not oppose the United States' motion to dismiss those claims.  Docket Item 117 at 3.  Based on that response, Judge Roemer deemed those claims withdrawn and recommended that they be dismissed.  Docket Item 128 at 5 n.9. This Court accepts and adopts Judge Roemer's recommendation in that regard, and Darwish's claims for false arrest/false imprisonment and abuse of process are dismissed.

his FTCA claim for malicious prosecution until he filed the second amended complaint—
that is, on November 16, 2020. *Id.* at 11-13.

This Court agrees with Darwish that his malicious prosecution claim did not
accrue until after he filed the first amended complaint.  A claim for malicious prosecution
accrues upon the termination of the underlying proceeding*, see Appolon v. United
States*, 2018 WL 461241, at *1 (E.D.N.Y. Jan. 18, 2018), and Darwish's removal
proceedings terminated on February 6, 2019, Docket Item 91 at ¶ 75.  So that was the
first date Darwish could have asserted his malicious prosecution claim either in this
Court or the appropriate administrative agency.  Because his claim for malicious
prosecution did not accrue until February 6, 2019, and because Darwish did not
explicitly raise that claim in his complaint or first amended complaint, this Court
respectfully disagrees with Judge Roemer's conclusion that Darwish's initiation of an
FTCA claim for abuse of process on December 7, 2018, also initiated his claim for
malicious prosecution.

But that does not end the inquiry.  Although this Court agrees with Darwish that
he did not institute his FTCA claim for malicious prosecution on December 7, 2018, it
does not agree that he instituted that claim on November 16, 2020.  Darwish argues
that because the second amended complaint rendered the previous complaint a legal
nullity, he needed only to have fully exhausted his remedies by November 16, 2020.
Docket Item 132 at 12.  He asserts that this "is distinct and different from filing a
complaint and then arguing that the claim accrued during the course of the complaint
pending and was now fully exhausted." *Id.*  And he draws that distinction for good
reason: as noted above, when the exhaustion requirement is not met, the plaintiff's

10

claim must be dismissed even when FTCA claims become administratively exhausted while the lawsuit is pending.  *See Liriano,* 827 F. Supp. 2d at 269.

But Darwish actually raised his malicious prosecution claim for the first time—that is, he "invok[ed] . . . the judicial process," *see McNeil*, 508 U.S. at 112, in connection with that claim—when he moved to amend his complaint to include an FTCA claim for malicious prosecution.  *See* Docket Items 55-1 and 55-2.  In other words, Darwish asked for permission to raise his malicious prosecution claim before that claim was administratively exhausted.  And trying to draw a distinction between a claim that became exhausted while the lawsuit raising it was pending and a claim that became exhausted while a motion to bring it was pending reaches too far.

Darwish's case is not like *Scott v. Quay*, 2020 WL 8611292 (E.D.N.Y. Nov. 16, 2020); *Corley v. United States Department of Justice*, 2016 WL 11395009 (E.D.N.Y. Sept. 6, 2016); and *Grancio v. De Vecchio*, 572 F. Supp. 2d 299 (E.D.N.Y. 2008).  In those cases, the plaintiffs amended their complaints to assert recently exhausted claims, but they did not seek leave or file an amended complaint until their claims were fully exhausted. *See Scott*, 2020 WL 8611292, at *11-12; *Corley*, 2016 WL 11395009, at *3-5; *Grancio*, 572 F. Supp. 2d at 310.

Instead, Darwish's case is like *Kessler v. Mr. Vaughn*, 2016 WL 7238810, at *6-7 (E.D. Va. Dec. 13, 2016).  Like Darwish, Kessler filed a motion to amend and attached a proposed amended complaint that for the first time raised allegations forming the basis of his FTCA claim.  *Id.* at *1.  And like Darwish, he did that before his claim was fully exhausted.  *Id.* at *7.  The Court found that Kessler initiated his FTCA claim when he

filed the motion and the proposed amended complaint.  *Id.*  And because Kessler had

not yet exhausted his remedies at that time, the Court dismissed his FTCA claim.  *Id.*

For the same reasons, this Court finds that the date of the motion to amend—that

is, October 29, 2019—is the date Darwish "instituted" his FTCA claim for malicious

prosecution.  And to be sure, that elevates form over substance.  But because the issue

is jurisdictional, that makes no difference.[5]  *Collins*, 996 F.3d at 109.

In sum, because Darwish did not fully exhaust his administrative remedies before

instituting his FTCA claim for malicious prosecution, this Court must dismiss that claim

without prejudice.[6]  *See Tarafa v. B.O.P. MDC Brooklyn*, 2007 WL 2120358, at *3

---

[5] What is more, proceeding this way is more efficient.  If this Court were to deny the motion and the case proceeded only to later be reversed on appeal, that would restart the process years from now.  By granting the motion and giving the plaintiff the opportunity to start anew now, the Court avoids that possibility.  28 U.S.C. § 2401(b) requires that an FTCA complaint be presented to the appropriate federal agency within two years of the claim's accrual and that an action be commenced within six months of the agency's final denial.  In the R&R, Judge Roemer noted that it appeared that "a dismissal without prejudice would not prevent [the] plaintiff from refiling his FTCA claim against the United States" because the six-month limitations period had not begun to run or if it had, it had not elapsed.  Docket Item 128 at 22 n.18.  In briefing the objections to the R&R, the parties do not indicate whether the DHS has since issued a denial.  Therefore, it appears that the six-month limitations period has not elapsed.  If the agency has issued a final denial, however, this Court would find it appropriate to equitably toll the six-month deadline from the date of denial to the date of this order.  *See United States v. Wong*, 575 U.S. 402, 420 (2015) (holding that FTCA time bars are subject to equitable tolling).  Any delay in filing the new action was not due to a lack of diligence by Darwish and his counsel but rather to this Court's consideration of the pending motions.

[6] Judge Roemer also recommended that even if this Court found that Darwish had fully exhausted his administrative remedies, this Court still should dismiss Darwish's FTCA claim because he failed to sufficiently plead compliance with other requirements of the FTCA.  Docket Item 128 at 22-25.  In particular, Judge Roemer found that Darwish did not allege that he filed a Standard Form 95 or "sufficient non-conclusory information to allow DHS to investigate or evaluate the claim's worth."  *Id.* at 23 (internal quotation marks omitted).  Because this Court finds that Darwish did not fully exhaust his administrative remedies before initiating his FTCA claim for malicious

(E.D.N.Y. July 23, 2007) ("[A]lthough it is this court's view that dismissing [plaintiff's] FTCA claim and requiring him to refile is 'the ultimate exercise of form over substance,' this court must dismiss [his] FTCA claim under the Supreme Court's dictates in *McNeil*." (internal citation omitted)); *see also McNeil*, 508 U.S. at 112 ("Every premature filing of an action under the FTCA imposes some burden on the judicial system . . . . Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims.  The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.").

## II.   *BIVENS* CLAIMS

Judge Roemer recommended that this Court dismiss Darwish's *Bivens* claims against Lipkind because such claims are barred by prosecutorial immunity.  Docket Item 128 at 26-31.  He also recommended that this Court dismiss the *Bivens* claims against Light and Lipkind because recognizing Darwish's claims here would extend *Bivens* to a new context and special factors counsel against extending *Bivens* in that way.  *Id.* at 31-43.  Darwish objects to each of Judge Roemer's recommendations.  *See* Docket Item 132 at 16-35.  This Court agrees with Judge Roemer.

### A.   Defendant Lipkind: Prosecutorial Immunity

Darwish argues that Judge Roemer erred in finding that prosecutorial immunity barred his claims against Lipkind.  *Id.* at 17-20.  He says that prosecutorial immunity

---

prosecution, and, therefore, that it must dismiss Darwish's claim without prejudice, it need not and does not reach this issue.

does not apply when "the decision to file the charges was erroneous, based on inaccurate information, or supported by a faulty investigation." *Id.* at 17.

Prosecutors are absolutely immune from suit, and that immunity "appl[ies] with full force" to activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Prosecutorial immunity

> encompasses not only [prosecutors'] conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations.

*Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986) (citations omitted); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 72 (2d Cir. 2019) (explaining that prosecutors have absolute immunity for decisions and acts that "constitute[] an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute").  But such immunity does not include "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Imbler*, 424 U.S. at 430-31).

In Darwish's objections, he argues that in obtaining evidence and bringing new charges of removability against him, Lipkind was performing investigatory acts not covered by prosecutorial immunity.  Docket Item 132 at 17-20.  But Darwish's second amended complaint never alleges that Lipkind collected evidence or investigated

anything.[7]  *See* Docket Item 91.  Instead, he faults Lipkind for "fail[ing] to conduct a reasonable investigation into [Darwish's] U.S. citizenship."  *Id.* at ¶ 27.

Lipkind's evaluation of the evidence, however, is protected by prosecutorial immunity.  As Darwish acknowledges, absolute prosecutorial immunity applies to the "professional evaluation of evidence assembled by the police."  Docket Item 132 at 18 (emphasis omitted) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  So Darwish's objection on this front fails.

Darwish's remaining allegations focus on Lipkind's filing charges.  For example, the second amended complaint alleges that Lipkind knowingly filed false charges of removability against Darwish and did so motivated, in part, by animosity toward Darwish's Muslim identity.  Docket Item 91 at ¶ 27; *see also id.* at ¶ 18 (alleging that Lipkind "issued a Form I-261 . . . alleging that [Darwish] was removable from the United States for committing additional crimes that [Darwish] did not in fact commit").  As Judge Roemer carefully explained, however, even if Darwish could prove that Lipkind knowingly filed a false petition because of Darwish's religion or national origin, Lipkind's actions and decisions "were all directly associated with his role of prosecutor and advocate."  *See* Docket Item 128 at 28-31, 31 n.21.  And for that reason, Lipkind still is entitled to absolute immunity.[8]

---

[7] In his objections, Darwish alleges that Lipkind "obtained other new evidence and sought to bring new charges of deportability against [Darwish]" and "investigated additional crimes also not involving [Darwish]," *see* Docket Item 132 at 18-19, but he does not cite the second amended complaint in support of those allegations, nor could he, *see* Docket Item 91.

[8] In Darwish's objections, he asserts that "Lipkind[']s status as a licensed attorney working for the federal government provides grounds for demanding[] accountability as his conduct also violates the rudimentary rules of the profession," and Darwish cites a number of the State of New York's Rules of Professional Conduct.  Docket Item 132 at

### B.      Failure to State a Claim: *Bivens* Claims Against Defendant Light

Judge Roemer also concluded that Darwish's *Bivens* claims against Light arose

in a new context and that special factors counseled hesitation in implying a *Bivens*

remedy here.  *Id.* at 31-42.  Darwish objects to both parts of this recommendation.  *See*

Docket Item 132 at 20-35.  He says that his case does not present a new *Bivens*

context and that even if it did, special factors do not counsel against implying a *Bivens*

remedy.  *Id.*

In *Bivens*, the Supreme Court recognized "an implied private action for damages

against federal officers alleged to have violated a citizen's constitutional rights."  *Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  The plaintiff in *Bivens* had been

subject to an unlawful, warrantless search and arrest by federal narcotics agents, and

the Supreme Court allowed him to pursue a claim for money damages against those

agents directly under the Fourth Amendment.  *Bivens*, 403 U.S. at 389-90.

Notwithstanding the creation of the *Bivens* remedy, the Supreme Court has

warned that "the *Bivens* remedy is an extraordinary thing that should rarely if ever be

applied in 'new contexts.'"  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (citing

*Malesko*, 534 U.S. at 69).  In fact, the Supreme Court has extended *Bivens* only twice:

once to an employment discrimination claim under the due process clause of the Fifth

Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979), and once to a prisoner's

---

19-20.  Darwish's allegations that the government pursued removal proceedings on the
basis of a shared last name without any other evidence linking him and Ali Darwish may
be cause for concern, and if Lipkind knew that Darwish did not commit the alleged
crimes but nonetheless brought immigration charges against him, that may raise issues
under the Rules of Professional Conduct.  But none of that provides the basis for a
*Bivens* claim or renders prosecutorial immunity inapplicable here.

Eighth Amendment claim for failure to provide adequate medical treatment, *see Carlson v. Green*, 446 U.S. 14 (1980). "Since *Carlson* in 1980, the Supreme Court has declined to extend the *Bivens* remedy in any new direction at all." *Arar*, 585 F.3d at 571. Indeed, the Court has gone so far as to say that if "the Court's three *Bivens* cases had been . . . decided today, it is doubtful that we would have reached the same result." *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (alterations and internal quotation marks omitted) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017)).

When asked to extend *Bivens*, courts engage in a two-step inquiry. *Id*. at 743. First, the court asks whether the claim arises in a "new context" or involves a "new category of defendants." *Id*. If the claim arises in a new context, the court then asks whether special factors counsel hesitation about extending *Bivens* to that new context. *Id.* And if there is reason to pause, the court should not extend *Bivens*. *Id.*

### 1.    New Context

Judge Roemer found that Darwish's Fourth and Fifth Amendment claims against defendant Light arise in a new context because they bear little resemblance to the three prior *Bivens* claims approved by the Supreme Court. Docket Item 128 at 33-37. Darwish objects to Judge Roemer's conclusion that his claims are meaningfully different from *Bivens*. *See* Docket Item 132 at 20-24. This Court agrees with Judge Roemer.

A claim arises in a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct. at 1859). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.*

17

Darwish argues that like the claims in *Bivens*, his claims "concern[] an allegedly unconstitutional arrest and search carried out in New York[]." Docket Item 132 at 20 (quoting *Hernandez*, 140 S. Ct. at 744). Darwish made the same argument to Judge Roemer, *see* Docket Item 113 at 19-20, and Judge Roemer concluded that Darwish's alleged Fourth and Fifth Amendment violations arise in a "highly different context," Docket Item 128 at 35. As Judge Roemer explained, in *Bivens*, the federal narcotics agents searched the plaintiff's home without a warrant, improperly arrested him in front of his family, and improperly subjected him to a visual strip search, *see Bivens*, 403 U.S. at 388; here, in contrast, Darwish was interrogated and detained by a CBP officer while crossing an international border and was issued a notice of appearance based on false information about his removability, Docket Item 128 at 35.

For several reasons, this Court agrees with Judge Roemer that Darwish's claims are meaningfully different than those in *Bivens*. First, in enforcing immigration law, defendant Light operated under a statutory and legal mandate distinct from that in *Bivens*. *Id.* at 35-36. Second, CBP officers are a "new category of defendants" not present in prior *Bivens* claims.[9]  *Id.*  And third, Darwish's Fifth Amendment claim has no

---

[9] Darwish also argues that Judge Roemer erred in finding that, as a CBP officer, defendant Light fell in a new category of defendants. Docket Item 132 at 23-24. He points to another court in this circuit that held a *Bivens* claim against ICE agents not to arise in a new context. *Id.* at 23 (citing *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020)). But as Judge Roemer noted, *Prado* arose in a scenario very different from the facts here. Docket Item 128 at 37 n.23. *Prado*, like *Bivens*, involved an unconstitutional search and arrest at the plaintiff's home. *Prado*, 451 F. Supp. 3d at 315. Although it involved ICE agents rather than narcotics agents, *Prado* otherwise was more similar than not to *Bivens*. Not so here. Defendant Light was a CBP officer patrolling the national border, not a federal agent conducting a search and arrest at an individual's home. Darwish also asserts that *Zelaya v. Hammer*, 516 F. Supp. 3d 778 (E.D. Tenn. 2021), suggests that "CBP agents can likely be . . . described as federal law enforcement agents[]." Docket Item 132 at 23. But Darwish misconstrues *Zelaya*. In

analogue in prior *Bivens* jurisprudence because the only previously recognized equal

protection claim involved employment discrimination.  *See id.* (citing *Tun-Cos v.*

*Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019)).

      In support of his argument, Darwish cites *Morales v. Chadbourne*, 793 F.3d 208

(1st Cir. 2015), and *Prado v. Perez*, 451 F. Supp. 3d 306 (S.D.N.Y. 2020).  As Judge

Roemer noted, however, "these cases are readily distinguishable . . . here."  Docket

Item 128 at 37 n.23.  *Morales* and *Prado* each involved an unconstitutional search and

arrest by ICE agents at the plaintiff's *home*, not an alleged violation as the plaintiff was

crossing a *national border*.  *Id.*  Although Darwish argues that the location of his claims

at a national border is not a meaningful difference, this Court agrees with Judge

Roemer and the defendants that it is.

      Indeed, the Supreme Court has found the location of a claim significant in

determining whether the claim expands *Bivens*.  In *Hernandez,* the Court found that the

claim presented a new context, noting the difference in location between the plaintiff's

---

*Zelaya*, the court found that the plaintiff's *Bivens* claims arose in a new context.  516 F.
Supp. 3d at 796, 799, 808.  It then declined to extend *Bivens* to the plaintiff's equal
protection and unreasonable search and seizure claims but extended *Bivens* only to the
plaintiff's excessive force claims.  *Id.*  Finally, Darwish cites a number of cases from
outside this circuit to support his argument that a CBP officer is not a new category of
defendant.  *See* Docket Item 132 at 23-24.  But several of those cases, *see, e.g.,*
*Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015); *Van Beek v. Robinson*, 879 F.
Supp. 2d 707 (E.D. Mich. 2012), were decided before the Supreme Court's admonition
that the expansion of *Bivens* is strongly disfavored and that cases arise in a new context
if they are "different in a meaningful way from previous *Bivens* cases decided by [the
Supreme Court]."  *Abbasi*, 137 S. Ct. at 1859.  What is more, the parties in those cases
did not press the argument, nor did those courts address, whether CBP agents are a
new category of defendants and whether a *Bivens* remedy should be extended. *See,*
*e.g.*, *Morales*, 793 F.3d at 214-23 (addressing whether defendants facing *Bivens* claims
were entitled to qualified immunity); *Van Beek*, 879 F. Supp. 2d at 711-15 (same).  So
those decisions do not close the door on the defendants' arguments here.

claims, which were grounded in an occurrence at the border, and previous *Bivens*

claims, which were based on occurrences in New York City and on Capitol Hill.[10]   *See*

*Hernandez*, 140 S. Ct. at 744.  In other words, the Court found the difference in location

meaningful.  And, therefore, so must this Court.

For all those reasons, this Court agrees with Judge Roemer that Darwish seeks

to extend *Bivens* to a new context.

### 2.      Special Factors Counseling Hesitation

Darwish argues that even if his claims arise in a new context, Judge Roemer

erred in concluding that special factors counseled hesitation.  *See* Docket Item 132 at

25-35.  In particular, he argues that Judge Roemer erred in concluding that national

security, separation of powers, availability of other remedies, and Congressional

inaction involving *Bivens* each counseled against extending *Bivens* in the context here.

*Id*.  Again, this Court agrees with Judge Roemer.

### a.      National Security

Darwish contends that national security is not a concern in his case because this

is an issue of "domestic law enforcement."  *Id*. at 25-31.  But his argument is a stretch.

Although the crimes ascribed to Darwish were committed domestically,[11] Darwish was

---

[10] Darwish argues that *Hernandez* "clearly refer[s] to violations *over* the border," not actions merely at the border.  Docket Item 132 at 24.  But even by that logic, his argument fails.  Darwish was not merely at the border; he was crossing it when the alleged violations occurred or began.  *See, e.g.*, Docket Item 91 at ¶ 8, 11.

[11] Darwish does not allege that the crimes ascribed to him were committed domestically in his second amended complaint, *see* Docket Item 91, but he makes this allegation in his objections to the R&R, Docket Item 132 at 26.

seeking to cross a national border into the United States.  Docket Item 91 at ¶ 8.  And this country's immigration laws look to crimes committed domestically in determining both admissibility and removability.  *See, e.g.*, 8 U.S.C. §§ 1227(a)(2), 1182(a)(2).  As Judge Roemer correctly observed, in *Hernandez*, the Supreme Court recognized that "regulating the conduct of agents at the border unquestionably has national security implications" and that "the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field."  Docket Item 128 at 38 (quoting *Hernandez*, 140 S. Ct. at 747).  Such concerns are present here as well, where the plaintiff seeks to challenge a CBP officer's reasons for detaining him at the border.

Contrary to the plaintiff's objections, this is not a case of the defendants citing concerns of "'national security' in the hope that the Court will look no further."  *See* Docket Item 132 at 26 (quoting *Elhady v. Pew*, 370 F. Supp. 3d 757, 771 (E.D. Mich. 2019)).  In *Elhady*, the court found that national security was not implicated when the plaintiff challenged the *conditions* of his detention, not the detention itself.  *Elhady*, 370 F. Supp. 3d at 770-71.  In other words, unlike Darwish, Elhady did not "challenge the action that touch[ed] upon national security, i.e., his detention."  *Id.*  Here, detention is precisely what Darwish challenges: he argues that he was impermissibly detained at the border.  *See, e.g.*, Docket Item 91 at ¶¶ 8,11.  Therefore, national security concerns not present in *Elhady* are present here.

Darwish also argues that because the whole basis of his claim is that he was *not suspicious,* Judge Roemer erred in finding that extending *Bivens* to his case would cause border officers to "consistently second guess their daily actions in investigating suspicious persons or activities at the border."  Docket Item 132 at 26-27 (quoting

Docket Item 128 at 39).  And to the extent that CBP is detaining citizens and legal permanent residents on "spurious and knowingly false information," Darwish argues, that conduct should be deterred.[12]  *Id.*

Darwish's argument misses the point.  The question is not whether CBP officers should detain someone for the wrong reason or no reason at all—certainly, they should not—but "whether the [j]udiciary should alter the framework established by the political branches for addressing cases in which it is *alleged*" that CBP officers detained a non-suspicious individual due to discrimination at the border.  *Cf. Hernandez*, 140 S. Ct. at 746 (emphasis added).  And as the Supreme Court found in *Hernandez*, because "the conduct of agents positioned at the border has a clear and strong connection to national security," the judiciary should hesitate before extending *Bivens* in such a case.  *Id*. at 746-47.

### b.    Separation of Powers

Darwish argues that Judge Roemer also erred in finding that extending *Bivens* to Darwish's case would imply a remedy "based on judicial second-guessing of judgments by government officials."  Docket Item 132 at 31 (quoting Docket Item 128 at 40).  In support of his argument, Darwish relies heavily on *Davis* and the Supreme Court's analysis of whether the plaintiff in that case had a cause of action.  *Id.* at 32 (citing

---

[12] In his objection to Judge Roemer's conclusion and analysis about national security, Darwish also makes a number of general allegations about misconduct and discrimination within and by CBP.  *See* Docket Item 132 at 28-31.  Although what Darwish relates is disturbing, this misconduct does not explain why national security concerns are not present when CBP officers decide whether to detain someone at the border.

*Davis*, 442 U.S. at 241-42).  And he asserts that "issues regarding management of the executive branch are not present" here.  *Id.* at 33.

As Judge Roemer observed, however, the executive is indeed implicated in Darwish's case, and so too are concerns about separation of powers.  Congress has delegated management of the immigration system to DHS, which is a part of the executive branch.  Docket Item 128 at 40 (citing 6 U.S.C. § 111); *see also Hernandez*, 140 S. Ct. at 746 ("One of the ways in which the Executive protects this country is by attempting to control the movement of people and goods across the border, and that is a daunting task.").  Moreover, "[j]udicial inquiry into the national-security realm raises concerns for the separation of powers," *Abbasi*, 137 S. Ct. at 1861 (internal quotation marks omitted), and as explained above, national security is implicated in this border crossing case.

### c.    Availability of Alternative Remedy

Judge Roemer found that the availability of an alternative remedy—in particular, relief under the INA—counseled hesitation.  Docket Item 128 at 40-41.  Darwish objects that the termination of the wrongful removal proceedings is not an effective remedy for the violation of his constitutional rights.  Docket Item 132 at 33-34.

Again, this Court agrees with Judge Roemer.  In passing the INA, Congress has "established a substantial, comprehensive, and intricate remedial scheme in the context of immigration."  *Arar*, 585 F.3d at 572.  In fact, the Second Circuit has noted that "[i]n light of the complexity of the remedial scheme Congress has created (and frequently amended), [the court] would ordinarily draw a strong inference that Congress intended the judiciary to stay its hand and refrain from creating a *Bivens* action in this context."

*Id.* at 573.  Judge Roemer drew that strong inference here and found that the INA counseled hesitation in Darwish's case.[13]  This Court agrees.

### d.   *Congressional Inaction Regarding Bivens*

Finally, Darwish challenges Judge Roemer's conclusion that "it is significant that Congress has not passed any law or statute allowing a [p]laintiff to recover damages from a federal officer in this context."  Docket Item 132 at 34 (quoting Docket Item 128 at 41).  In fact, Darwish asserts that the opposite is true: it is significant that despite being aware of *Bivens,* Congress has not dislodged it.  *Id.*  But Darwish cannot dispute that Congress has not authorized a damages remedy in cases involving civil immigration enforcement.  *See Maria S. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) ("[D]espite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement.").  In any event, Darwish's objection to the consideration of Congressional inaction surrounding *Bivens* is neutral at best and does not overcome the previously discussed special factors, each of which counsel hesitation.

For all those reasons, this Court agrees with Judge Roemer that Darwish's claims present a new context and that special factors counsel hesitation against implying a *Bivens* remedy here.  Therefore, this Court agrees that Darwish's *Bivens* claims against Light must be dismissed.

---

[13] In *Arar*, the Second Circuit ultimately found that reliance on the INA as an alternative remedial scheme presented difficulties because Arar's allegation was that he was prevented from seeking meaningful review and relief through the INA.  *Arar*, 585 F.3d at 573.  Those difficulties are not present in Darwish's case.  Indeed, as Judge Roemer observed, not only did Darwish have an alternative remedy available to him, he successfully pursued that remedy.  Docket Item 128 at 41.

### C.       Failure to State a Claim: *Bivens* Claims Against Defendant Lipkind

Judge Roemer also concluded that even if prosecutorial immunity did not apply to Lipkind, the *Bivens* claims against Lipkind "should still be dismissed for substantially the same reasons . . . [as] enumerated with respect to [] Light."  Docket Item 128 at 42-43.  Darwish objects to that recommendation as well as to Judge Roemer's specific findings underlying it: that the *Bivens* claims against Lipkind present a new context and that national security, separation of powers, availability of an alternative remedy, and Congressional inaction regarding *Bivens* present special factors counseling hesitation. Docket Item 132 at 35.  But beyond that, Darwish does not develop his objections or address Judge Roemer's specific findings as being different with respect to Lipkind than they were with respect to Light.

Judge Roemer carefully articulated how just as each special factor applied to the claims against Light, they apply equally to the claims against Lipkind.  *See* Docket Item 128 at 42-43.  For the reasons stated above and in the R&R, this Court agrees that even if prosecutorial immunity did not apply to the *Bivens* claims against Lipkind, the *Bivens* claims against Lipkind must be dismissed because they arise in a new context and special factors counsel hesitation against implying a *Bivens* remedy.

### <u>CONCLUSION</u>

For the reasons stated above and in the R&R, the defendants' motions to dismiss, Docket Items 94, 98, and 102, are GRANTED.  Darwish's FTCA claim for malicious prosecution against the United States is dismissed without prejudice. Darwish's *Bivens* claims for violations of the Fourth and Fifth Amendment against Light

and Lipkind are dismissed with prejudice.  Darwish's second amended complaint,

Docket Item 91, is dismissed.  The Clerk of the Court shall close the case.

       SO ORDERED.


       Dated:  March 21, 2022
                Buffalo, New York



                                    */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE